JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Carol E. Goodyear ("plaintiff"), appeals the trial court's denial of her motion for default judgment and its grant of the partial motion to dismiss and motion for summary judgment of defendant-appellee, Waco Holdings, Inc., et al. ("Waco"). After reviewing the facts of the case and pertinent law, we affirm.
 {¶ 2} Plaintiff began working at Waco as a data process manager in 1983, and by 1995 she was promoted to the position of information technology ("IT") manager. In 1999, Waco hired Lawrence Napolitan ("Napolitan") as its chief financial officer, vice president of finance, secretary, and treasurer, and he became plaintiffs supervisor. Plaintiff had two employees working for her, Doug Martin ("Martin") and Jim Teresi ("Teresi"). This constituted the entire IT department at Waco during the time frame pertinent to this case.
 {¶ 3} Through 2001, plaintiff received positive reviews and evaluations while working at Waco. In 1999, 2000, and 2001, Napolitan was in charge of plaintiffs annual reviews, and he rated her performance as above average. Specifically, plaintiff received ratings of eight, eight-and-one-half, and eight, on a scale of one-to-ten, for those years respectively. The record shows that around the year 2000, Waco underwent an IT infrastructure upgrade and a major software conversion. Subsequently, the IT department began to experience various problems, including being over budget, email and voicemail server *Page 4 
overloads, failure to communicate about and implement the software conversion, and information loss due to power outages.
 {¶ 4} In July 2004, Napolitan conducted plaintiffs annual review and rated her below average in the "alertness" and "creativity" categories. Specifically, for those two categories, Napolitan rated plaintiff as a three on a scale of one-to-ten. For "alertness," the preprinted review form asked, "How well does the employee grasp instruction and direction?" The preprinted answer associated with a "three" rating stated, "(3) Often requires added explanation." For "creativity," the preprinted review form asked, "Does the employee find new ways to do things and come up with new ideas?" The preprinted answer associated with a "three" rating stated, "(3) Offers an occasional new idea." Napolitan rated plaintiff as a five for her overall evaluation, which meant that she was "doing an average job."
 {¶ 5} In the comments section of plaintiff's 2004 annual review, Napolitan wrote the following:
 {¶ 6} "Overall, Carol's performance was slightly below average for someone in her position and with her years of experience at Waco. The areas that Carol requires the most improvement are the areas of alertness and creativity. At times, Carol does not seem to grasp certain concepts and either misunderstands what is told to her or creates some confusion with the parties that she is working with. This also causes her to rely too much on the advice of outside consultants. Also Carol is not imaginative enough when coming up with solutions to issues *Page 5 
and problems. Most of the time she supplies the facts (as she understands them) and looks toward me or others for the solution. Carol needs to take responsibility for the problems that arise within her department and not blame the consultants for failures. Three prominent issues came to be problems over the course of the last fiscal year; the problems encountered with the ADP server, the crash and inoperability of the Microsoft Exchange server and the delay and disagreements encountered in the development of the new software (both the SalesLogix and Rental modules). Carol must ensure that these issues do not repeat themselves in the new year.
 {¶ 7} "In the upcoming year, I expect Carol to take charge over her job and be more confident in what she is telling me and provide more recommendations to me for solving problems that do not entirely rely on what the consultants tell her. She should challenge the recommendations of the consultants and understand them completely and be convinced that they are the best options before she presents them to me. Carol must see that the MAS500 modules under her responsibility are completed and rolled out on schedule."
 {¶ 8} In April 2005, the IT department was still experiencing problems and Waco decided to restructure the department. On May 4, 2005, Napolitan fired plaintiff and Teresi and delegated plaintiffs duties as IT manager to Louis Naude ("Naude"), who was the accounting manager at Waco. Napolitan retained Martin as a senior programmer. At the time of the restructuring, plaintiff was a 57-year-old *Page 6 
female, and Teresi was a 35-year-old male; both lost their jobs. Martin, who kept his job, was a 45-year-old male, and Naude, who assumed the IT manager's duties, was a 33-year-old male.
 {¶ 9} According to the record, Napolitan discharged plaintiff from Waco "[f]or increasing occurrences of and recurrences of preventable problems, not performing the duties that were expected of her, [and] failure to keep me informed of various issues after repeated direction to do so." Napolitan terminated Teresi for similar reasons.
 {¶ 10} Approximately five months after this restructuring, Naude quit his job at Waco. Napolitan promoted Martin to the IT manager and hired three new employees to work underneath Martin in the IT department.
 {¶ 11} On April 28, 2006, plaintiff filed a complaint against Waco, alleging age and gender discrimination, in violation of R.C. 4112.02,4112.14 and 4112.99. Subsequently, plaintiff dismissed her claim and refiled it on July 20, 2007. On July 27, 2007, Waco filed a partial motion to dismiss, which the court granted on October 23, 2007, dismissing plaintiffs claims of age discrimination under R.C. 4112.02
and 4112.99 as being filed outside of the 180-day statute of limitations.
 {¶ 12} In the meantime, on September 28, 2007, the court granted Waco's motion to transfer the "entire official case record" from plaintiffs first action, filed on April 28, 2006, into the record of the instant case. Over the next six months, both parties filed various motions, including Waco's March 4, 2008 motion for *Page 7 
summary judgment on plaintiffs remaining claims, and engaged in ongoing discovery.
 {¶ 13} On March 17, 2008, plaintiff filed a motion for default judgment claiming that Waco failed to file an answer to her refiled complaint. On March 24, 2008, the court denied plaintiffs motion and granted Waco's motion for leave to file an answer instanter. In the alternative, the court found that Waco's answer from the first action was made a part of the record on September 28, 2007.
 {¶ 14} On April 18, 2008, the court granted Waco's summary judgment motion. The journal entry reads as follows:
 {¶ 15} "In order for plaintiff to prevail, the court would have to find that Naude's taking over her position on a temporary basis was pretextual. To the contrary, however, the evidence establishes that Naude was reassigned plaintiffs duties with the expectation that he was to stay indefinitely, and with no indication at that time that he would leave within a matter of months. Accordingly, defendants' motion for summary judgment (filed 3/04/08) is well taken and granted."
 {¶ 16} Plaintiff timely appealed and cites four assignments of error for our review. Her first two assignments of error will be addressed together because they stem from the court's March 24, 2008 denial of plaintiffs motion for default judgment. *Page 8 
 {¶ 17} "I. The trial court abused its discretion by denying Appellant's Motion for Default Judgment as Appellees' failed to timely plead or otherwise defend."
 {¶ 18} "II. The trial court erred in deeming Appellees' Answer filed as part of its order consolidating the record of the originally filed case, alternatively, the trial court abused its discretion by granting Appellees' leave to file their Answer because Appellees' failure was not excusable neglect."
 {¶ 19} We review a court's ruling on a motion for default judgment for an abuse of discretion. Jones v. Dillard, Cuyahoga App. No. 87733,2006-Ohio-6417. The term `abuse of discretion' connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 20} Pursuant to Civ. R. 55(A), a plaintiff may file for default judgment when a defendant "has failed to plead or otherwise defend ***." Failure to file an answer in a timely fashion pursuant to Civ. R. 7 and 12 may justify the court's granting a default judgment motion. See,Thrower v. Olowo, Cuyahoga App. No. 81873, 2003-Ohio-2049. However, pursuant to Civ. R. 6(B)(2), "the court for cause shown may at any time in its discretion" extend the time within which a defendant is required to file an answer to a complaint, and "upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect ***." See, also,Miller v. Lint (1980), 62 Ohio St.2d 209, 214 (holding that the court's discretion in settling *Page 9 
procedural matters is not unlimited, and "some showing of excusable neglect' was a necessary prelude to the filing of the (untimely) answer").
 {¶ 21} In the instant case, Waco was required to file an answer by August 17, 2007. However, rather than file an answer, Waco filed the following: 1) July 27, 2007, partial motion to dismiss; 2) August 21, 2007, notice of change of address; 3) September 4, 2007, motion to compel attendance at deposition; 4) September 4, 2007, motion in opposition to plaintiffs motion for protective order; 5) September 6, 2007, motion to transfer record; 6) September 10, 2007, supplement to motion to compel; 7) October 31, 2007, motion for sanctions; 8) October 31, 2007, motion for leave to file affidavits; 9) January 22, 2008, motion to compel discovery; 10) January 30, 2008, opposition to plaintiffs motion for an extension of time; 11) February 1, 2008, motion for leave; 12) February 6, 2006, motion for leave; 13) March 4, 2008, motion for summary judgment; 14) March 4, 2008, notice of filing depositions; and 15) March 19, 2008, opposition to plaintiffs motion for default judgment and, in the alternative, motion for leave to file answer instanter.
 {¶ 22} Waco argues that its obligation to file a responsive pleading was satisfied on September 28, 2007 when the court transferred the record from plaintiffs first action to the instant case. To support this argument, Waco noted that plaintiffs two complaints were identical and that its answer in the first action was made a part of the record in the case at hand. Waco also argues that *Page 10 
its motions to dismiss and for summary judgment, among its other filings, amounted to "otherwise defending" the case as contemplated by Civ. R. 55(A).
 {¶ 23} Plaintiff, on the other hand, argues that there is no authority to support Waco's "consolidation" approach to pleading and that Waco's actions did not constitute "otherwise defending" the case against it.
 {¶ 24} In Ohio Valley Radiology Associates, Inc. v. Ohio ValleyHospital Association, et al. (1986), 28 Ohio St.3d 118, 121, the Ohio Supreme Court held that "[i]t is only when the party against whom a claim is sought fails to contest the opposing party's allegations by either pleading or `otherwise defend [ing]' that a default arises." In this sense, and in the absence of pleading, "defending" an action means contesting the claimant's allegations. See, also, Black's Law Dictionary (7th Ed. 1999) 429 (defining "defend" as "[t]o deny, contest, or oppose (an allegation or claim)").
 {¶ 25} In the instant case, the court ruled that Waco's answer was deemed filed when the record transferred from the first case. In the alternative, the court granted Waco's motion for leave to file an answer. A search of Ohio cases does not show any law directly on point with this issue. However, under either a theory of excusable neglect or otherwise defending, we cannot say that the trial court abused its discretion in denying plaintiffs motion for default judgment. Plaintiff did not object to the progression of the case until after Waco filed numerous motions, including a motion for summary judgment, took depositions, *Page 11 
and otherwise defended the case. See, e.g., Reese v. Proppe (1981),3 Ohio App.3d 103 (holding that motions to dismiss, among other filings, may operate to "prevent default without presently pleading to the merits") (internal citations omitted).
 {¶ 26} Accordingly, plaintiffs first two assignments of error are overruled.
 {¶ 27} "III. The trial court erred in granting Summary Judgment for Appellees because Appellant established her prima facie case so that reasonable minds could reach different conclusions as to whether Appellees' justification for discharging Appellant was discriminatory based upon age and sex."
 {¶ 28} Appellate review of granting summary judgment is de novo. Pursuant to Civ. R. 56(C), the party seeking summary judgment must prove that: 1) there is no genuine issue of material fact; 2) they are entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Dresher v. Burt (1996), 75 Ohio St. 3d 280.
 {¶ 29} Pursuant to R.C. 4112.02, "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the *** sex [or] *** age *** of any person, to discharge without just cause *** or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." See, *Page 12 
also, R.C. 4112.14 (making discrimination of employees over age 40 a separate statutory violation).
 {¶ 30} To establish a prima facie case of age discrimination under R.C. 4112 et seq., the employee must show that 1) she is a member of the protected class; 2) she was subject to an adverse employment action; 3) she is qualified for the position; and 4) she was replaced by, or her discharge permitted the retention of, a person of comparable qualifications outside the protected class. Mauzy v. Kelly Services,Inc. (1996), 75 Ohio St.3d 578, 582.
 {¶ 31} To establish a prima facie case of gender discrimination, the employee must show that 1) she was a member of the statutorily-protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by, or her discharge permitted the retention of, a person not belonging to the protected class. McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792.
 {¶ 32} Once a prima facie case of age or gender discrimination is established, the employer may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge.Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. The employee must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. Manofsky v. GoodyearTire Rubber Co. (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. The employee's burden is to prove that the employer's *Page 13 
reason was false and that discrimination was the real reason for the discharge. Wagner v. Allied Steel Tractor Co. (1995),105 Ohio App.3d 611, 617, 664 N.E.2d 987. Mere conjecture that the employer's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer. To meet his or her burden in response to such a summary judgment motion, the plaintiff must produce some evidence that the employer's proffered reasons were factually untrue. Powers v. Pinkerton, Inc., Cuyahoga App. No. 76333, 2001-Ohio-4119.
 {¶ 33} "In order to establish pretext, the employee must show that the employer's proffered reason is not worthy of credence or that discriminatory reasons more likely motivated the employer's decision."Walser v. Ohio Univ., Court of Claims App. No. 2003-03680,2004-Ohio-4722. See, also, Manzer v. Diamond Shamrock Chem. Co. (C.A. 6, 1994), 29 F.3d 1078 (holding that pretext may be shown by proving "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge").
 {¶ 34} In the instant case, it is undisputed that plaintiff is a member of the statutorily protected class for both gender and age discrimination claims, i.e., she was a 57-year-old female at the time of her termination. It is also undisputed that plaintiff was discharged. In looking at the facts in a light most favorable to *Page 14 
plaintiff, we assume, for argument's sake, that she was qualified for the position at Waco. This brings us to the fourth element of prima facie discrimination claims — whether she was replaced by someone not belonging to the protected classes. Plaintiff argues that she was replaced by Naude, a 33-year-old male, and that not long after this, Naude was replaced by Martin, a 45-year-old male, and Waco hired three new individuals to work in the IT department. Plaintiff alleges that this shows Waco did not restructure its IT department; rather, it deliberately pushed her out because of her gender and age.
 {¶ 35} Waco, on the other hand, argues that Naude assumed plaintiffs responsibilities as the IT manager, in addition to keeping his current duties as the accounting manager. Waco further argues that this is not considered being "replaced" in terms of a discrimination lawsuit. "A person is replaced only when another employee is hired or reassigned to perform his duties. An employee is not considered replaced `when another employee is assigned to perform the plaintiffs duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" Cassel v. SchusterElectronics, Inc., Summit App. No. 21966, 2004-Ohio-6276.
 {¶ 36} Waco further argues that Napolitan wanted Naude to run both the IT and accounting departments on a permanent basis because he was satisfied with Naude's current performance with the company. *Page 15 
 {¶ 37} A careful review of the record shows that plaintiffs allegation of being "replaced" by Naude is unsupported by the evidence. Napolitan testified in deposition that Naude took over plaintiffs duties and, when Naude abruptly left a few months later, Napolitan promoted Martin, who was the only other employee left in the IT department at the time. However, assuming arguendo, that plaintiff did establish a prima facie case of discrimination, we turn now to the burden shifting analysis to look at legitimate reasons versus pretextual reasons for plaintiffs termination.
 {¶ 38} As stated above, Waco's alleged legitimate reason for terminating plaintiff was failure to perform her duties and a restructuring of the IT department. This is supported by evidence in the record, including plaintiffs 2004 annual review and Napolitan's deposition testimony. The burden now shifts to plaintiff to show that this proffered reason was pretextual in nature. See, Powers, supra. Plaintiff opines that Napolitan wanted to get rid of her because she was an older female. However, nothing in the record supports this. The only evidence that plaintiff relies on is Napolitan's 2004 annual review of her, when he said she required added explanation for things, she did not seem to grasp certain concepts, she misunderstood or confused things, and she looked toward others for solutions.
 {¶ 39} These statements, coupled with the fact that Waco also discharged Teresi, a 35-year-old male, at the same time it discharged plaintiff, are not *Page 16 
enough to show that Waco's restructuring the IT department was a pretext for employment discrimination. See, Vickers v. Wren Industries,Inc., Montgomery App. No. 20914, 2005-Ohio-3656 (holding that "Plaintiffs speculation and conjecture [that "Defendants saw Mr. Vickers as a slow old man"] are not sufficient evidence to establish that Defendants perceived Mr. Vickers as not being able to work");Manofsky, supra, (holding that "[a]s a general rule, the judiciary will not second guess business judgments by an employer making personnel decisions").
 {¶ 40} In line with our review of a court's granting summary judgment, we hold that there are no genuine issues of material fact in the instant case. Plaintiffs allegations of discrimination, which according to the record are limited to her 2004 annual review conducted by Napolitan, are undisputed. However, reasonable minds could not conclude that these remarks amount to gender or age based discrimination. As such, Waco is entitled to judgment as a matter of law.
 {¶ 41} Accordingly, plaintiffs third assignment of error is without merit and is overruled.
 {¶ 42} "IV. The trial court committed reversible error in granting appellees' Partial Motion to Dismiss."
 {¶ 43} Specifically, plaintiff argues that the trial court erred in dismissing her age discrimination claims under R.C. 4112.02 and 4112.99
as being filed outside the 180-day statute of limitations. *Page 17 
 {¶ 44} We review a ruling on a motion to dismiss under a de novo standard. "[W]hen ruling on a motion to dismiss pursuant to Civ. R. 12(B)(6), the trial court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party." Mclntyre v. Rice, Cuyahoga App. No. 81339, 2003-Ohio-3940.
 {¶ 45} Pursuant to R.C. 4112.02(N), an age discrimination claim brought under this section must be filed within 180 days after the alleged discriminatory practice occurred. However, Ohio courts have held that the statute of limitations for age discrimination claims brought under R.C. 4112.14 is six years. See, Ahern v. Ameritech Corporation, etal. (2000), 137 Ohio App.3d 754. Furthermore, R.C. 4112.99 allows a separate cause of action for damages for violations of R.C. 4112 et seq. Ohio courts have held the following regarding R.C. 4112.99's statute of limitations: "The Ohio Supreme Court's determination of the statute of limitations for claims brought under 4112.99 varies depending upon the type of discrimination: a six-year statute of limitations for sex discrimination claims under Cosgrove v. Williamsburg of Cincinnati
(1994), 70 Ohio St.3d 281, and a 180-day statute of limitations for claims based on age discrimination under Bellian v. Bicron Corp. (1994), 69 Ohio St.3d 517." Vickers, supra, at ¶ 19.
 {¶ 46} In the instant case, plaintiff was terminated on May 4, 2005. Plaintiff filed her first case on April 28, 2006, alleging age discrimination under all three statutory sections. More than 180 days had elapsed since her *Page 18 
termination. The court, on October 23, 2007, dismissed plaintiffs age discrimination claims under R.C. 4112.02 and 4112.99. In doing so, the court observed that "R.C. 4112 provides an election of remedy scheme which requires plaintiff to elect one of the three sections, 4112.02, 4112.14 or 4112.99, under which to bring her age discrimination claims. The Ohio Revised Code explicitly makes the remedies under sections 4112.02 and 4112.14 mutually exclusive causes of action; an employee may enforce her rights using one and only one of these two available avenues." See, also, R.C. 4112.02(N) (stating that "[a] person who files a civil action under this division is barred *** from instituting a civil action under section 4112.14 of the Revised Code"); and 4112.14(B) (stating that "any person instituting a civil action under this section is *** thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code ***").
 {¶ 47} Although the court granted Waco's partial motion to dismiss based on the 180-day statute of limitations, plaintiff was still able to pursue her age discrimination claim under R.C. 4112.14, as well as her gender discrimination claim. See, Leininger v. Pioneer National Latex,et al. (2007), 115 Ohio St.3d 311, 318 (holding that "[a]lthough R.C. 4112.02(N) *** and 4112.14(B) *** require a plaintiff to elect under which statute *** a claim for age discrimination will be pursued, when an age discrimination claims accrues, a plaintiff may choose from the full spectrum of remedies available"). *Page 19 
 {¶ 48} In presuming all of plaintiffs allegations are true, we find that, as a matter of law, she has failed to state a claim upon which relief could be granted concerning age discrimination allegations filed under R.C. 4112.02 and 4112.99 because she did not file her claims within the 180-day statute of limitations. Plaintiffs fourth and final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATRICIA ANN BLACKMON, P.J., and ANN DYKE, J., CONCUR. *Page 1