[Cite as *Indian Creek Condominium Property Owners Assn. v. Team Equity*, 2019-Ohio-4876.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| INDIAN CREEK CONDOMINIUM PROPERTY OWNERS ASSOCIATION | : | |
| | : | |
| | : | Appellate Case No. 28369 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2019-CV-59 |
| v. | : | |
| | : | (Civil Appeal from |
| TEAM EQUITY, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of November, 2019.

. . . . . . . . . . .

DARCY GOOD, Atty. Reg. No. 0068249, RACHEL M. KUHN, Atty. Reg. No. 0090220 and MAGDALENA E. MYERS, Atty. Reg. No. 0087846, 11311 Cornell Park Drive, Suite 220, Cincinnati, Ohio 45242
    Attorneys for Plaintiff-Appellee

RANDALL WEBB, TEAM EQUITY, P.O. Box 751051, Dayton, Ohio 45475
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Team Equity appeals from the trial court's March 27, 2019 judgment and decree of foreclosure in favor of the Indian Creek Condominium Property Owners Association ("the Association"), which followed the Association's motion for default judgment.   We hereby affirm the judgment of the trial court.

{¶ 2} The Association filed a complaint for foreclosure against Team Equity and the Montgomery County Treasurer on January 4, 2019.   The complaint listed a Dayton post office box address for Team Equity, with instructions to also serve the complaint at 1791-A Cherokee Drive in Dayton and at a Tamarack Trail address in Springboro. The complaint asserted that the Association was "an existing corporation, not for profit, organized under the laws of the State of Ohio [which] was formed in accordance with Chapter 5311 of the Ohio Revised Code to act as the Association of Unit Owners for the Indian Creek Condominium Property Owners Association."   The Association alleged that Team Equity owned the condominium unit at 1791-A Cherokee Drive and that the Association had a lien on that property "to secure payment of the maintenance fees, common expenses and assessments"; according to the complaint, the Association's lien was "second only to real estate taxes and prior recorded liens of first mortgages on the condominium unit."

{¶ 3} The Association alleged that Team Equity owed it $5,170.10, plus interest, based upon the lien and additional unpaid maintenance fees and assessments, as provided for in the "Declarations of Covenants, Restrictions and Conditions" as of December 31, 2018.   The complaint stated that the Declaration was not attached to the complaint "as it is filed with the Montgomery County Recorder at Microfiche No. 80175A10, *et seq.*," which provided "constructive notice of its existence and contents" to

the "whole world," and that due to the size of the document, it was "impractical and economically inefficient to attach and serve on multiple parties." The Association also asserted that the "Defendants already possess a copy."

**{¶ 4}** The Association also asserted that it was owed maintenance fees and assessments incurred subsequent to the filing of its complaint, and that "[i]n accordance with the condominium documents recorded with the Montgomery County Recorder's office, * * * Team Equity, ha[d], by covenant, agreed to be responsible for the legal fees and court costs incurred in the within action."

**{¶ 5}** The complaint sought judgment against Team Equity in the sum of $5,170.10, plus interest, plus maintenance fees and assessments incurred subsequent to the filing of this action in an amount to be determined, plus interest and costs. It also sought a finding that its lien was a "good and valid lien" upon the property; sought that the property be sold, and its attorney fees and costs be paid from the proceeds of the sale; or alternatively, that the Association be granted a judgment for attorney fees and costs upon which execution may issue.

**{¶ 6}** The complaint stated that a copy of a Preliminary Judicial Report (Exhibit A) and the Certificate of Lien (Exhibit B) were attached. The only item attached to the complaint, however, was a copy of the notice required by the Fair Debt Collection Practices Act.

**{¶ 7}** On January 4, 2019, a summons was issued to Team Equity at the Tamarack Trail address, the Cherokee Drive address, and the Dayton post office box. The summons stated in part:

You are hereby summoned and required to serve upon the Plaintiff's

attorney * * * a copy of an **answer to the Complaint** within **28 days after receipt of this summons, exclusive of the day you received the summons.** Your original **Answer** must be filed with the Clerk of Court's Office **within 3 days** after you serve the Plaintiff's attorney * * *.

* * *

**If you fail to appear and defend, Judgment by Default may be rendered against you granting Plaintiff(s) the relief demanded in the Complaint.**

(Emphasis sic.)

{¶ 8} The court's docket reflects that service on Team Equity was completed via certified mail at the Tamarack Trail address on January 9, 2019; the return receipt was signed by Olivia Webb. Next to Webb's signature were boxes delineated "Agent" and "Addressee," and the "Agent" box was marked. The court's docket also reflects that service on Team Equity was completed via certified mail at the Cherokee Drive address on January 14, 2019; the return receipt was signed by Randall Webb. Next to Webb's signature were boxes delineated "Agent" and "Addressee," and the "Agent" box was marked.

{¶ 9} On January 14, 2019, the Montgomery County Treasurer filed an answer.

{¶ 10} On February 13, 2019, the court issued a notice of default. The notice stated:

A review of the file in this action indicates that service has been perfected on defendant(s). The defendant(s) TEAM EQUITY IS in default for answer or appearance.

Please review your file to ascertain whether or not default

proceedings pursuant to Civil Rule 55 are in order at this time. Should there be some valid reason why default judgment cannot be taken at this time, inform the Court.

Failure to file a response to this notice within fourteen days may result in the administrative dismissal of this action.

{¶ 11} The notice provides that a copy of the notice was sent to Team Equity at the Tamarack Trail address by ordinary mail. The court's docket reflects that the notice was also sent to Team Equity at the post office box and was returned marked "return to sender."

{¶ 12} On February 25, 2019, the court issued a notice to the Association of potential dismissal for failure to prosecute and stating that, unless counsel filed a response within 14 days showing cause as to why the case should not be dismissed, the court would dismiss the case. This notice was sent by ordinary mail to Team Equity at the Tamarack Trail address.

{¶ 13} On February 26, 2019, the Association filed a response to the court's notice, which stated:

Now comes [the Association], and hereby gives notice of its intent to proceed on its Complaint against the Defendant, Team Equity, for judgment and eventual Sheriff's Sale of the subject property for said defendant's failure to pay maintenance fees and assessments. Plaintiff has requested the necessary affidavits and ordered the final judicial report and plans to proceed within 60 days of the filing of this Response.

{¶ 14} The certificate of service attached to the response stated that the response

was sent "by U.S. Regular Mail and/or the Court's electronic service" to Team Equity at the Dayton post office box and at 1791-A Cherokee Drive. The court's docket reflects that service was not perfected at the Dayton post office box.

{¶ 15} On March 22, 2019, the Association filed a "Final Judicial Report" as well as a "Notice of Filing Title Invoices," which totaled $581 and was to be paid as court costs. The Association also filed a motion for default judgment and an affidavit of account, asserting that the Association was entitled to default judgment on its claim for foreclosure of its lien. The attached certificate of service provided that the motion was sent to Team Equity via U.S. regular mail at the Tamarack Trail address.

{¶ 16} The attached Affidavit of Account, signed by "Mollie Moore," provided that Moore was the community association manager for Indian Creek Condominium Property Owners Association, and that the Association's records of individual owner accounts were "kept as part of the ordinary course of the Association's business." Moore averred that she had personal knowledge of Team Equity's account, as reflected in Exhibit A, which was correct and accurate. According to Moore, each "charge levied by the Association, pursuant to the authority granted to the Association in its Declaration and/or Bylaws, is likewise entered as a line item upon the account as each is incurred." Moore averred as follows:

(7) The total amount due includes charges for attorney's fees and legal services,

charged at a rate of $190.00 per hour through July 31, 2018, and $200.00

per hour beginning August 1, 2018, or flat rates pursuant to terms contained

in a contract for services with the law firm of Kaman & Cusimano, LLC,

which have been incurred by the Association, as itemized below:

| | | |
|---|---|---:|
| 03/18/18 | Collection Letter | $95.00 |
| 04/20/18 | Lien | $190.00 |
| 07/30/18 | Demand Letter | $95.00 |
| 01/02/19 | Complaint for Foreclosure | $650.00 |
| 02/15/19 | Affidavit of Account | $100.00 |
| | Total | $1,130.00 |

(8) The total amount due also includes costs incurred by the Association, as itemized below:

| | | |
|---|---|---:|
| 04/25/18 | Lien Filing Fee | $60.00 |
| 12/21/18 | Preliminary Judicial Report | $425.00 |
| 01/02/19 | Complaint Filing Fee | $535.50 |
| | Total | $1,020.50 |

(9) The Association caused a lien to be filed. The lien is subject to adjustments due to ongoing monthly assessments and/or administrative late fees, enforcement assessments, collection costs, attorney's fees, legal services and costs that remain unpaid.

{¶ 17} The trial court entered default judgment in favor of the Association. The judgment entry stated:

> The Court finds that all necessary parties have been served with summons according to law and are properly before the Court.
>
> The Court further finds Defendant(s), Team Equity, are in default of Answer or other pleading as to Plaintiff's Complaint and thereby admit all of

the allegations of Plaintiff's Complaint.

The Court finds that there is due the Treasurer of Montgomery County, Ohio, accrued real property taxes, penalties, and interest thereon, upon the premises hereinafter described, the exact amounts being unascertainable at the present time, but which amount will be determined at the time of the sale of said premises, for which amount the [Treasurer] has a good and valid lien.

The Court further finds that there is due to the Plaintiff, the sum of $5,709.38 with interest at eight percent * * * per annum from February 15, 2019, for delinquent maintenance fees and assessments as set forth in its Complaint, which lien is filed for record as Instrument No. 2018-00024224 of Montgomery County Records, and thereby became and is [a] good, valid and subsisting lien upon the premises herein and, as a result, the Plaintiff is entitled to judgment against Team Equity, * * * and is entitled to foreclose on the subject property.

* * *

**ORDER**

It is therefore ORDERED ADJUDGED AND DECREED THAT, unless the sums hereinbefore found due, together with the costs of this action, including the cost of the judicial certificates of title filed herein for which the Plaintiff is entitled to reimbursement, be fully paid prior to confirmation of sale, the equity of redemption of all defendants in and to said premises shall be foreclosed.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Sheriff, upon confirmation of sale, shall pay from the proceeds thereof, the following:

FIRST     The costs herein, including the sum of $581.00, payable to Plaintiff, c/o Kaman & Cusimano, LLC, for the Judicial Reports filed herein.

SECOND     To the Treasurer of the this County the unpaid taxes, assessments, interest and penalties due and payable on said premises.

THIRD     To Plaintiff, the sum of $5,709.38 with interest at eight percent (8%) per annum from February 15, 2019, on its judgment and condominium lien, subject to automatic subsequent adjustments reflecting any additional unpaid interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, paralegal fees, and court costs, through the date of confirmation.

FOURTH     The balance, if any to be held by the Clerk of Court pending further order of the Court

{¶ 18}  Team Equity's Notice of Appeal was signed by "Randall L Webb/Team Equity *pro se.*"  Team Equity's brief was submitted by "Randall Webb for TEAM Equity" and asserts two "Law Arguments" as follows:

CONDOMINIUM ASSOCIATION HAS THE STATUTORY DUTY TO REPAIR AND MAINTAIN THE COMMON AREAS ON THE CONDOMINIUM PROPERTY AND A CONDOMINIUM DECLARATION SETS FORTH THE RIGHTS AND RESPONSIBILITIES OF THE ASSOCIATION.

THERE WAS AN APPARENT EFFORT TO CREATE CONFUSION AND OR CAUSE THE TIMELY [SIC] DELIVERY OF THE NOTICE OF

FILING BECAUSE OF THE MEANS THE DOCUMENTS WERE DELIVERED CAUSING QUESTION OF PROPER SERVICE.

{¶ 19} In its first argument, Team Equity asserts that "at least one or more items" were damaged and in need of repair in "the common areas of the condominium structures, namely the foundation and concrete slab of the building and individual unit." Team Equity asserts that these issues caused water to enter "into the unit itself" and created mold issues, as well as "probable continuing damage to the overall structure itself" and the interior surfaces of the unit. Further, it asserts that "[d]espite numerous attempts, through phone calls, discussions with property workers, discussions with city inspectors, and direct visits to the property management offices," the issue has been "continual[ly] ignor[ed] and deflect[ed]." According to Team Equity, the Association's failure to address these issues "raises the issue of bre[a]ch of contract on their part."

{¶ 20} In its second argument, Team Equity asserts as follows:

One of the most obvious points of consideration is that of being properly notified of an action, in order to properly defend against that action in a timely manner. In this matter, the Appellant acknowledges that service was made in a variety of ways, but those ways were flawed in a host of ways. Either they were mailed to an address that was a property owned by the Appellant or their agents but not a place they receive mail and were later delivered by hand some weeks later (one being over six weeks after postmark) and even then they were mailed in plain envelopes with no indication of their sender.

Given some of the other practices set forth one could at least

question the intent of this action, especially with that Association and or their agents being aware of the totality [of] the surrounding circumstance. Under Civil Rule 60 it is vital that one be provided proper notice of an action in order to properly offer a response.

Appellant acknowledges that there is a large variance in how service can be perfected in a matter, which leaves it open to subjective scrutiny. However, it is clear that in this matter that the Appellant has a very strong footing for their claims against the Appellee and a number of witnesses and documents to validate their claim(s). Because of these presentments herein, it is hoped that this Court will at least view the total [sic] of the issue.

{¶ 21} In conclusion, Team Equity asserts that there continues to be unaddressed damage that is the responsibility of the Association and its management company. Team Equity "seeks for this matter to be dismissed," for the Association to be ordered "to repair the property common areas as required by statute," or "that this matter * * * be remanded back to the Trial Court and a full and complete hearing of the facts be made for consideration of this matter."

{¶ 22} The Association responds that Team Equity was properly served with the summons and complaint, yet failed to appear or otherwise respond, and therefore default judgment was appropriate. According to the Association, Team Equity failed to present any evidence on appeal or in the trial court that service was improper and has not presented any other valid reason for its failure to respond to the Association's complaint.

{¶ 23} The Association asserts that Team Equity's arguments in its brief concerning maintenance of the property may not be brought for the first time on appeal

and are barred under R.C. 5311.18(B)(6).[1]  Finally, the Association asserts that "Randall Webb purports to represent Team Equity, but is not a party to this case nor an attorney licensed in Ohio; therefore this appeal should be dismissed."  According to the Association, Webb's "efforts to assert arguments before this Court are in conflict with R.C. 4705.01."[2]

{¶ 24} In reply, Team Equity asserts that it "was and is a D.B.A. and it is improper for such to hold property in its name nor is it possible."  Team Equity asserts that a "defense that the Defendant named in an action is not the real party interest is an affirmative defense, and therefore must be specifically pleaded or is waived."  Team Equity repeats its argument that the Association is in breach of its duties and "has caused [Team Equity] to suffer monetary and physical damages, through and by [the Association's] willful ignoring of the ongoing issue."  Finally, Team Equity asserts that the trial court's judgment "should be reversed for all the stated facts presented herein pursuant to Civil Rule 60(B)," or "at the very least" remanded to the trial court for a full hearing of Team Equity's claims.

{¶ 25} Team Equity attached to its reply brief an undated correspondence from Mollie Moore to "Randy Webb" (Exhibit A) that states in part, "Congratulations on the

---

[1] "In any foreclosure action, it is not a defense, set off, counterclaim, or crossclaim that the unit owners association has failed to provide the unit owner with any service, goods, work, or material, or failed in any other duty."  R.C. 5311.18(B)(6).

[2] "No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which the person is not a party concerned, either by using or subscribing the person's own name, or the name of another person, unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules. * * *."  R.C. 4705.01.

purchase of your new condominium * * *."  As Exhibit B, Team Equity attached a "Payment Due Notice" issued to Randy Webb, dated April, 2018.  Finally, Team Equity attached as Exhibit C a notarized "Statement of Facts," dated September 25, 2019, that provides as follows:

> Please be advised that the Title and Deed issued for the above property was issued in the name "TEAM EQUITY" in error.  This property was purchased by means of Sheriff Sale in August 2017.
>
> The recording of the Deed was wrongly issued in the TEAM EQUITY name.  TEAM EQUITY is a d.b.a. number and is not a corporation, L.L.C. or any other form of registered business entity.
>
> Randall L. Webb was the individual who completed the initial paperwork at the time of the sale.  He and his daughter, Christin Lambert (Webb) had been working under the TEAM Equity d.b.a., since approximately September 2016.
>
> It is therefore necessary that the title deed to this property be corrected to reflect proper ownership.
>
> Sincerely,
>
> Randall L. Webb
>
> I attest that the above statements are true and correct, and that this request is being made to correct the record(s), and is being made by free will.

{¶ 26}  Underneath Webb's signature line appears the statement: "Randall Webb as individual D.B.A. TEAM Equity."

{¶ 27}  Civ.R. 4.1(A)(1)(a) allows for service of process by certified mail.

" 'Service by certified mail, "[e]videnced by return receipt signed by any person," is complete when the clerk notes receiving the return receipt on the docket. Civ.R. 4.1(A)(1)(a).' *Chuang Dev. LLC v. Raina*, 2017-Ohio-3000, __ N.E.3d __ (10th Dist.)." *Hurley v. Nifty 50 Tavern*, 2d Dist. Clark No. 2017-CA-46, 2017-Ohio-7935, ¶ 15. As this Court has noted:

> * * * "Valid service of process is presumed when the envelope is received by any person at the defendant's residence; the recipient need not be the defendant or an agent of the defendant." (Citations omitted.) *LVNV Funding, Inc. v. Burns*, 2d Dist. Clark No. 2013 CA 67, 2014-Ohio-732, ¶ 14. *See also Brownfield v. Krupman*, 10th Dist. Franklin No. 14AP-294, 2015-Ohio-1966, ¶ 16 ("Notably, Civ.R. 4.1(A) does not require that delivery is restricted to the defendant or to a person authorized to receive service of process on the defendant's behalf."). * * *

*Jardine v. Jardine*, 2d Dist. Montgomery No. 27845, 2018-Ohio-3196, ¶ 8.

{¶ 28} As this Court has further previously noted:

> Civ.R. 55(A) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor[.] * * * If the party against whom judgment by default is sought has appeared in the action, he shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application." A trial court's grant or denial of a motion for default judgment will not be reversed absent an abuse of

discretion. *Equitable Ascent Fin., L.L.C. v. Christian*, 196 Ohio App.3d 34, 2011-Ohio-3791, 962 N.E.2d 322, ¶ 6 (10th Dist.). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

In Ohio, "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants." *Yocum v. Means,* 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20. * * * Furthermore, "[a]n appellate court is limited to reviewing the record, and will disregard alleged facts that are not of record in the trial court." (Citations omitted.) *Chase Manhattan Mtg. Corp. v. Locker*, 2d Dist. Montgomery No. 19904, 2003-Ohio-6665, ¶ 10.

*Tax Ease Ohio, LLC v. Jones*, 2d Dist. Montgomery No. 27687, 2017-Ohio-9053, ¶ 4-5.

{¶ 29} As the trial court noted, the court's docket reflects that service was perfected pursuant to Civ.R. 4.1. Team Equity's arguments about the Association's

alleged breach of contract and the allegedly improper title of the property are not of record in the trial court, and we will accordingly disregard them. As in *Tax Ease*, Team Equity "failed to answer the complaint, to otherwise defend, or to make any type of appearance before the trial court." Team Equity's summons advised it that failure to appear and defend may result in a default judgment, and the Association's motion for default judgment provided that it was sent via U.S. regular mail to Team Equity at the Tamarack Trial address on March 22, 2019. Based upon the forgoing, we cannot conclude that the trial court abused its discretion in granting a default judgment in favor of the Association.

**{¶ 30}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Darcy Good
Rachel M. Kuhn
Magdalena E. Myers
Team Equity c/o Randall Webb
Michele Phipps
Hon. Mary Lynn Wiseman